# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 21-283-01-JLS |
| RUSMALDY JIMENEZ-HICIANO | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

In late 2017, this defendant, an employee at Walmart's Bethlehem, Pennsylvania distribution center, devised a scheme to defraud his employer by hiding certain high-end electronic merchandise when it came into the warehouse on delivery trucks; mailing that merchandise via FedEx to addresses in Allentown controlled by the defendant; selling the stolen goods; and sharing the proceeds with others. He continued his brazen scheme even after he was fired from Walmart in May 2018, staying in contact with another warehouse employee to continue stealing. Defendant Jimenez-Hiciano's crimes caused a loss to Walmart of approximately $2,000,000.

For these reasons, as well as for the reasons provided below, the government recommends that the Court impose a sentence at the high end of the Sentencing Guideline range of 41 to 51 months in prison; full restitution of $536,000, a forfeiture money judgment, and a special assessment of $400.

## I.    BACKGROUND

On June 14, 2022, the defendant pled guilty to the indictment, charging him with four counts of mail fraud, in violation of 18 U.S.C. § 1341. During his plea colloquy, the defendant admitted that he defrauded Walmart out of the value of the Apple iPads and Apple Watches charged in Counts 1, 2 and 3 of the indictment, and attempted to defraud Walmart out of the value of the Ninendo Switches charged in Count 4. The defendant admitted further that he

had resold the merchandise he had obtained by fraud, sharing the proceeds with others. Jimenez-Hiciano's full conduct mandates the sentence that the government is advocating: a sentence at the high end of the guideline range; full restitution of $536,000, forfeiture, and a special assessment of $400.

## II.     SENTENCING CALCULATION

### A.     Statutory Maximum Sentence.

For the violations of 18 U.S.C. § 1341, the defendant faces the following statutory maximum sentence: 80 years' imprisonment, three years of supervised release, $1,000,000 fine, and a $400 special assessment. Full restitution of as much as $536,000 also shall be ordered. Forfeiture of any property which constitutes or is derived from proceeds obtained directly or indirectly from the offenses also may be ordered.

### B.     Sentencing Guidelines Calculation.

The parties agree that the Probation Office correctly determined the defendant's advisory United States Sentencing Guidelines range, as follows: a base offense level of 7 per USSG § 2B1.1(a)(1) (PSR ¶ 28, p. 8), to which 16 levels are added because the loss of approximately $2,000,000 ($2,113,659 as calculated in the PSR) is more than $1,500,000 but not more than $3,500,000, per USSG § 2B1.1(b)(1)(I) (PSR ¶ 29). Two more levels are added because the defendant led and organized a criminal activity that involved fewer than five persons that was not otherwise extensive, per USSG § 3B1.1(c) (PSR ¶ 31). This yields an adjusted offense level of 25 (PSR ¶ 33), from which three levels are subtracted for acceptance of responsibility per USSG § 3E1.1(a) and (b), for a total offense level of 22 (PSR ¶¶ 35, 36).

The defendant has no adult criminal convictions (PSR ¶ 39) yielding a criminal history score of 0, which places him in Criminal History Category ("CHC") I. A person at level 22, in CHC I, faces a range of 41 to 51 months in prison (PSR ¶ 72, p. 15).

# III.   ANALYSIS

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that the most appropriate sentence is the one that the government advocates here, that is, a sentence at the high end of the Sentencing Guideline range of 41 to 51 months in prison; full restitution of $536,000, a forfeiture money judgment, and a special assessment of $400.

Once the Court has properly calculated the guideline range, the Court must next consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).[1]

---

[1] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'" *United States v. Dragon*, 471 F.3d 501, 506 (3d Cir. 2006) (quoting *United States*

**Consideration of the 3553(a) Factors.**

**1.     The nature and circumstances of the offense**

The defendant worked at the Walmart distribution center in Bethlehem, Pennsylvania from 2014 until May 17, 2018, when he was fired. In late 2017, he devised a scheme to defraud his employer by hiding certain high-end electronic merchandise when it came in on delivery trucks; mailing that merchandise via FedEx to addresses in Allentown that he controlled; selling the stolen goods; and sharing the proceeds with others. He executed this brazen scheme even after his employer fired him, enlisting a fellow warehouse worker to continue stealing. By stealing approximately $536,000 worth of merchandise from his employer, Jimenez-Hiciano committed a serious offense. Moreover, theft schemes targeting employers breed cynicism among honest workers and other honest citizens. As such, Jimenez-Hiciano's crime has a negative impact on the community beyond the direct financial loss. The scheme was terminated not due to any action the defendant took, but by the fact that his employer learned of his scheme and fired him. Thus, Jimenez-Hiciano's participation in the scheme over an approximately six-month period, resulting in significant financial harm to his employer, reveals an established pattern of misbehavior, rather than a sudden departure from an otherwise law-abiding life. His crime falls squarely within the class of cases to which the applicable guidelines are addressed, and thus consideration of the nature of the offense, § 3553(a)(1), counsels in favor of a sentence at the high end of the guideline range.

**2.     The history and characteristics of the defendant.**

Defendant Jimenez-Hiciano is a 38-year-old man born in Rio Piedra, Puerto Rico. He was raised in an intact family by his parents, who separated after he was an adult (PSR ¶¶ 46,

_____

*v. Navedo-Concepcion*, 450 F.3d 54, 58 (1st Cir. 2006)).

47). His mother is retired in Manhattan, and his father lives in the Bronx, working as a driver for a medical transport company (PSR ¶ 46). The defendant has a sister living in Bronx, New York and a half-sister living in Reading (PSR ¶ 46).

His family lived in Puerto Rico until he was two years old, when they moved to New York, New York (PSR ¶ 46), where they lived until the defendant was 12 years old, at which time the family moved to the Dominican Republic. The defendant lived in the Dominican Republic until he was 18 years old, graduating from high school there, then returned to New York, where he lived in Harlem until he was 30 (PSR ¶¶ 46, 47, 65).

The defendant reported that at various times while he was growing up, his mother owned and operated a bakery in Puerto Rico; later, his parents owned a grocery store in New York, where they both worked (PSR ¶ 49). Jimenez-Hiciano had a stable and supportive upbringing with his parents, who provided him with appropriate structure and guidance (PSR ¶¶ 49, 52).

When he was 30 years old, at the time when he was divorcing his wife, the defendant moved to Reading, Pennsylvania (PSR ¶¶ 48, 53). He committed the charged offenses while living in Reading. Jimenez-Hiciano has four children with three women; after committing the charged crimes, he moved to South Carolina when he was 36, and currently lives with Yanissa Ledesma in South Carolina, with one of her children from a prior relationship, and the two children they have together (PSR ¶¶ 53, 55, 56). He is currently employed full time as a maintenance manager in North Charleston, South Carolina (PSR ¶ 66).

The defendant's history supports the need for significant incarceration. He grew up in an intact home, where his parents were small business owners themselves, and strict, teaching him right from wrong. Yet he schemed to defraud his employer out of thousands of dollars worth of merchandise, for months on end. Even after he was fired, he reached back into

the company to persuade a fellow worker to help continue the stealing. Given the energy shown by his other, legitimate work, it is disheartening to review the deception Jimenez-Hiciano chose to engage in by planning and executing his scheme. He did not have a single or brief lapse of judgment, but instead continued to hide expensive electronic merchandise, and spirit it out of the warehouse, on an ongoing basis. Out of greed, he continued the scheme. When caught, the defendant did not directly acknowledge his own wrongdoing, but instead complained that his pay was low and told a fantastic tale of being approached by unknown individuals who directed him to steal from his employer. These actions create for the Court a vivid and unflattering portrayal of the character of the man who faces sentencing in this case.

    **3.**    **The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense**

It is clear that the recommended term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2). The need for a sentence to reflect the seriousness of the crime is particularly important where the crime is against an organization rather than individuals, as there sometimes appears to be an attitude that offenses involving organizations are less serious. But such a view would be incorrect, as the employer here is a public company, whose individual shareholders were harmed by the defendant's scheme.

In this case, there is also strong need to promote respect for the law and provide just punishment for the offense. The Court's sentence must take into account the seriousness of the defendant's crime and the harm he caused by his fraud. The need for a sentence to promote respect for the law is among the most important sentencing principles established by Congress. *See Gall v. United States*, 128 S. Ct. 586, 599 (2007) (recognizing "[t]he Government's legitimate concern that a lenient sentence for a serious offense threatens to promote disrespect

for the law. . .").

### 4. The need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant

In addition, there is also a strong need for both specific and general deterrence. While the defendant has an otherwise clean record, he brazenly carried out his scheme for months, then attempted to defraud his former employer even after being fired for his thefts. Given this pattern, the government has little confidence that, absent a lengthy sentence of imprisonment, the defendant will put his criminal conduct behind him and become a law-abiding citizen. The government believes that the recommended sentence is warranted to both deter the defendant from future criminal conduct but also to protect the public from his crimes.

General deterrence is also a key consideration. If employees use their positions to steal repeatedly, but receive light sentences, those tempted to steal may be emboldened, and the vast majority of honest citizens may wonder why the penalty is not more severe. By its nature, Jimenzez-Hiciano's crime threatened to undermine public confidence in the rule of law. And while Jimenez-Hiciano's case was relatively straightforward, fraud investigations can be complex and take many months. The government simply does not have the resources to investigate every fraudster who schemes against businesses, and some escape detection. Thus, imposition of a sentence at the high end of the guidelines provides not only specific but also general deterrence to others who would commit a similar offense. As Courts of Appeals have held, Section 3553(a) is not limited to deterrence of the particular defendant. *See United States v. Eura*, 440 F.3d 625, 638 (4th Cir. 2006) (concurring opinion) (referring to the court's consideration of "the general deterrence factor, § 3553(a)(2)(B)"); *United States v. Jordan*, 435 F.3d 693, 698 (7th Cir. 2006) (describing how Section 3553(a) "specifies that the court may consider the need for general deterrence and respect for the law"); *United States v. Glover*, 431

F.3d 744, 751 (11th Cir. 2005) (noting that pre-*Booker* and post-*Booker*, "the underlying goals of the statute and the Guidelines are retribution, general deterrence, incapacitation, and rehabilitation" (internal quotation marks omitted)); *see also United States v. Yeaman*, 248 F.3d 223, 232 (3d Cir. 2001) (referring to Section 3553(a)'s goals of "general deterrence, specific deterrence, retribution, and rehabilitation"). The recommended sentence – a sentence at or near 51 months in prison; restitution of $536,000; a forfeiture money judgment; and a special assessment of $400 – would protect the public by deterring others from engaging in the lies, deceit and fraud conducted by defendant Jimenez-Hiciano, and deterring Jimenez-Hiciano from returning to criminal conduct when he is released.

### 5. The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct

As an initial matter, the need to avoid unwarranted sentencing disparity is a factor not primarily concerned with sentencing disparities in a particular case; it is designed to ensure sentencing consistency among similarly situated defendants across the entire nation. *See United States v. Parker*, 462 F.3d 273 (3d Cir. 2006); *United States v. Carson*, 560 F.3d 566, 586 (6th Cir. 2009) ("Although it is true that § 3553(a)(6) requires a sentencing judge to consider 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct,'" that "factor 'concerns national disparities between defendants with similar criminal histories convicted of similar criminal conduct – not disparities between co-defendants.'"). Because the sentence the government seeks here is within the guideline range, it avoids unwarranted disparities of the type that Congress meant to address.

### 6. Restitution

Restitution in the amount of $536,000 is mandatory. 18 U.S.C. § 3663A; USSG § 5E1.1; PSR ¶ 83.

# IV. __CONCLUSION__

At the end, the government urges that this was a venal crime, and one that can be deterred with a sufficient sentence. All of the appropriate considerations of sentencing favor the imposition in this case of a sentence at the high end of the sentencing guideline range. The government respectfully requests that the Court sentence defendant to a term of imprisonment at or near 51 months in prison; restitution of $536,000; a forfeiture money judgment; and a special assessment of $400.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney


_s/Mary E. Crawley_
MARY E. CRAWLEY
Assistant United States Attorney


September 19, 2022

**CERTIFICATE OF SERVICE**

The foregoing Government's Sentencing Memorandum has been filed and served

electronically through the District Court Electronic Case System upon:

Glennis L. Clark, Esquire
Law Offices of Glennis L. Clark
1101 Hamilton Street
Suite 351
Allentown, PA 18101
glclark1221@gmail.com

*s/ Mary E. Crawley*
MARY E. CRAWLEY
Assistant United States Attorney

Dated: September 19, 2022